UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:18-CV-00255-GNS-RSE

OHIO SECURITY INSURANCE COMPANY                                    PLAINTIFF

v.

ROCKFORD AUTOMOTIVE, INC., et al.                                  DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Summary Judgment (DN 57).  The motion is ripe for adjudication.  For the following reasons, the motion is **GRANTED**.

### I.    STATEMENT OF FACTS

Plaintiff Ohio Security Insurance Company ("Ohio Security") seeks a declaratory judgment regarding its duty to defend or indemnify Defendants Rockford Automotive, Inc. ("Rockford Automotive") and Alfred Pizzonia, Jr., ("Pizzonia") regarding a wrongful death suit asserted in Jefferson, Kentucky, Circuit Court by the Estate of James A. Walker, III against Pizzonia, Rockford Automotive, Jurmaine L. Henderson ("Henderson"), Erica T. Jackson ("Jackson"), and State Farm Mutual Automobile Insurance Company (the "state suit").  (Compl. ¶ 43, DN 1; Compl. ¶ 1, *Estate of Walker v. Henderson*, No. 16-CI-01179 (Jeff. Cir. Ct.) [hereinafter State Compl.]).

The state suit arose out of a motor vehicle accident on March 21, 2015, in Louisville, Kentucky.  (State Compl. ¶¶ 1, 4).  The state complaint alleged Pizzonia, individually and as an employee of Rockford Automotive, sold a 2002 Ford Explorer to Jackson before the accident.  (State Compl. ¶ 17).  The state complaint further claims Jackson became the lawful owner of the vehicle and later negligently entrusted the vehicle to Henderson.  (State Compl. ¶¶ 5, 15).

Henderson was driving the Ford Explorer when he failed to yield at an intersection and struck James A. Walker ("Walker"), who was operating a motorcycle and died at the scene. (State Compl. ¶¶ 8-9). The state complaint alleges, in the alternative, Pizzonia and Rockford Automotive violated state title statutes when selling the vehicle to Jackson and therefore remained owners of the Ford Explorer "for insurance purposes" on the date of the accident. (State Compl. ¶¶ 17-18). At the time of the accident, Rockford Automotive, a mechanic shop, was the named insured on a business automobile policy[1] issued by Ohio Security (the "Policy"). (Compl. Ex. C, at 10, DN 1-4).

On April 19, 2018, Ohio Security brought this declaratory action against the state suit parties, and Rockford Automotive and Pizzonia ("Defendants") answered. (Answer, DN 16). After Henderson and Jackson failed to answer, the Court granted default judgment against them. (Order Pl.'s Mot. Default J., DN 43; Order Pl.'s Mot. Default J., DN 44). Ohio Security then moved for summary judgment, which has been fully briefed and is ripe for decision.[2] (Pl.'s Mot. Summ. J., DN 57; Defs.' Resp. Pl.'s Mot. Summ. J., DN 59; Pl.'s Reply Mot. Summ. J., DN 64).

---

[1] As *Couch on Insurance* notes:

> Under a business auto policy, insureds generally have a broad array of options, which includes all those found in personal policies but may include literally "any auto" in which the insured has the requisite interest to justify the specific coverage provided, and frequently is purchased to cover an ever-changing "fleet" of vehicles.

11 Steven Plitt et al., *Couch on Insurance* § 156.6 (3d ed. Dec. 2020 update).

[2] Walker's Estate filed an answer to Ohio Security's Complaint and Amended Complaint (DN 19, 20), but did not respond to Ohio Security's motion for summary judgment.

## II.     JURISDICTION

The Court has subject matter jurisdiction under 28 U.S.C. §§ 2201 and 1332(a) because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.[3]

## III.     STANDARD OF REVIEW

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as

---

[3] While not addressed by the parties, the Court must consider the threshold issue of whether to exercise jurisdiction over this matter arising under the Declaratory Judgment Act. *See Nationwide Mut. Fire Ins. Co. v. Willenbrink*, 924 F.2d 104, 105 (6th Cir. 1991). In relevant part, the Act provides:

> In a case of actual controversy within its jurisdiction . . . , any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). "In determining the propriety of entertaining a declaratory judgment action, competing state and federal interests weigh in the balance, with courts particularly reluctant to entertain federal declaratory judgment actions premised on diversity jurisdiction in the face of a previously-filed state-court action." *Adrian Energy Assocs. v. Mich. Pub. Serv. Comm'n*, 481 F.3d 414, 422 (6th Cir. 2007). The Sixth Circuit has instructed district courts to examine five factors to determine whether jurisdiction is appropriate:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve as a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (citation omitted). The issue in this action is the scope of Ohio Security's duty to defend Rockford Automotive and Pizzonia in the underlying action, which turns on the application of two coverage provisions in the policy. Importantly, as discussed below, the factual dispute regarding ownership of the vehicle in question at the time of the accident is not material to the coverage determination. No coverage exists regardless whether Rockford Automotive, Pizzonia, or Jackson owned the

a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Judicial admissions of a party in pleadings can be considered in ruling on a summary judgment motion. *See Magna Int'l, Inc. v. Deco Plas, Inc.*, No. 3:08CV427, 2010 WL 2044873, at *3 (N.D. Ohio May 21, 2010) (citing *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 549 (6th Cir. 2000); *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 829 (6th Cir. 2000)). If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence. . .of a genuine dispute. . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252.

---

vehicle. Next, there is no "procedural fencing" involved here; this action was not brought until more than three years after the underlying lawsuit was filed in state court. The present declaratory action will not increase friction between this and the state court because there is no encroachment upon the pending state action to which Ohio Security is not a party. There are no novel questions of state law in this case, only a relatively straight-forward interpretation of Ohio Security's coverages for "hired" and "non-owned" vehicles. The only impact of this action on the state lawsuit is tangential: whether Ohio Security is required to defend Rockford Automotive or Pizzonia will be of no concern to the state court's consideration of the underlying tragedy and an apportionment of fault. Finally, the state court action does not provide a better or more effective remedy because there are no factual disputes attendant the coverage issues which require further exploration.

## IV. DISCUSSION

Ohio Security has moved for summary judgment on the basis that the Policy's provisions foreclose coverage and that Ohio Security does not owe a duty to defend or indemnify Rockford Automotive or Pizzonia in the state suit. (Pl.'s Mem. Supp. Mot. Summ. J. 11). Of course, the interpretation of insurance contracts in Kentucky is a matter of law for the court, and in the absence of factual disputes, may be determined on summary judgment. *See McFerrin v. Allstate Prop. & Cas. Co.*, 29 F. Supp. 3d 924, 929 (E.D. Ky. 2014) (citations omitted). "Under Kentucky law, an insurer's duty to defend is broader than its duty to indemnify, and consequently, if there is no duty to defend, then there is no duty to indemnify." *Auto Club Prop.-Cas. Ins. Co. v. Adler*, No. 1:14-CV-00046-JHM, 2015 WL 4934200, at *3 (W.D. Ky. Aug. 18, 2015); *see also Nautilus Ins. Co. v. Structure Builders & Riggers Mach. Moving Div., LLC*, 784 F. Supp. 2d 767, 771 (E.D. Ky. 2011); *Cole's Place Inc.*, 936 F.3d at 403. Kentucky courts determine whether an insurer has a duty to defend its insured by comparing the language of the underlying complaint to the terms of the policy. *See Auto Club Prop.-Cas.*, 2015 WL 4934200, at *3. Insurers must provide a defense in a suit if any of the allegations potentially, possibly, or might be covered. *Aetna Cas. & Surety Co. v. Kentucky*, 179 S.W.3d 830, 841 (Ky. 2005). "[A]llegations in a complaint are not by themselves sufficient to trigger the duty to defend, but rather, the obligation to defend arises out [of] the language of the insurance contract." *DiBeneditto v. Med. Protective Co.*, 3 F. App'x 483, 485 (6th Cir. 2001) (per curiam) (citing *Thompson v. W. Am. Ins. Co.*, 839 S.W.2d 579, 581 (Ky. App. 1992)). If the insurer makes a determination that the claim is not covered under the policy, it may either defend the claim under a reservation of rights or refuse to defend the claim. *Aetna Cas. & Sur.*, 179 S.W.3d at 841. "However, should coverage be found, the insurer will be liable

for all damages naturally flowing from the failure to provide a defense." *Id.* (internal quotation marks omitted) (citation omitted).

Ohio Security issued business auto policy No. BAS55677910 to Rockford Automotive,[4] which was in effect at the time of the accident. (Pl.'s Mem. Supp. Mot. Summ. J. 3; Compl. Ex. C, at 10). The Policy declarations state:

> **ITEM TWO: SCHEDULE OF COVERAGES AND COVERED AUTOS**
> This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those autos[5] shown as covered autos. Autos are shown as covered autos for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO section of the Business Auto Coverage Form next to the name of the coverage.

(Compl. Ex. C, at 12 (internal quotation marks omitted)). Coverages designated are "08" and "09", for which the Policy provides:

> **BUSINESS AUTO COVERAGE FORM**
> **SECTION I – COVERED AUTOS**
> ITEM TWO of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".
>
> A. Description Of Covered Auto Designation Symbols
> **Symbol**              **Description Of Covered Auto Designation Symbols**
> . . .
>
> | 8 | Hired Autos Only | Only those autos you lease, hire, rent or borrow. This does not include any auto you lease, hire, rent, or borrow from any of your employees, partners (if you are a partnership), members |

---

[4] Defendants' response attaches an Ohio Security policy effective from 2018 to 2019, after the date of the accident, and a policy modification to a wholly separate policy effective during 2013. (Defs.' Resp. Pl.'s Mot. Summ. J. Ex. 1, DN 59-1; Defs.' Resp. Pl.'s Mot. Summ. J. Ex. 2, DN 59-2). Defendants fail to explain the relevance of either document. While the 2013 modification was effective during the relevant period, it does not provide insuring agreements or exclusions, but is a list of endorsements added to a policy that Defendants failed to provide to the Court. Ohio Security attached the relevant Policy provisions to its Complaint, and Defendants failed to dispute the Policy's validity; rather, Defendants claimed that they "have complied with the terms of *the* policy . . . ." (Answer ¶ 15 (emphasis added)).

[5] The term "auto" is defined, in relevant part, as "[a] land motor vehicle . . . designed for travel on public roads . . . ." (Compl. Ex. C, at 27).

| | | |
|---|---|---|
| 9 | Non-Owned Autos Only | (if you are a limited liability company) or members of their household.<br>Only those autos you do not own, lease, hire, rent or borrow that are used in connection with your business.  This includes autos owned by your employees, partners (if you are a partnership, members (if you are a limited liability company) or members of their household but only while used in your business or your personal affairs. |

(Compl. Ex. C, at 17-18 (internal quotation marks omitted)).  As to the covered autos, the Policy provides that Ohio Security will pay all damages for bodily injury from accidents involving a covered auto.  (Compl. Ex. C, at 18-19).

In determining the scope of coverage under Ohio Security's policy it must be noted that only Rockford Automotive is listed as a named insured; Pizzonia is not a named insured.  (Compl. Ex. C, at 10).  Thus all references in the policy to "you" and "your" relate to Rockford Automotive.  (Compl. Ex. C, at 18-19 ("Throughout this policy the words 'you' and 'your' in the Policy refer to the Named Insured shown in the Declarations.")).

Next, because the scope of the duty to defend extends to the allegations in the underlying complaint, there appear to be three potential scenarios:  the Ford Explorer was owned alternatively by Rockford Automotive, by Pizzonia, or by Jackson.  First, there clearly is no coverage under the Policy if the vehicle was owned by Rockford Automotive.  Rockford Automotive could not have, leased, hired, rented, or borrowed a vehicle that it already owned, which would defeat coverage under the Hired Autos provision.  Similarly, the Non-owned Autos coverage only applies to autos that Rockford Automotive "[does] not own"; therefor this coverage would not apply to allegations that Rockford Automotive was the owner.  The Non-owned Autos provision also would apply only to automobiles "used in connection with [Rockford Automotive's] business" and there are no facts alleged in the state action (nor do Defendants assert) that Henderson's use of the vehicle at the time of the accident was connected in any way with Rockford Automotive's garage business.

7

Coverage likewise would not be provided in the event that Pizzonia owned the vehicle involved in the fatal accident. Nowhere is there any allegation that the vehicle was leased, hired, rented or borrowed by Rockford Automotive from Pizzonia. To the contrary, the allegation appears uncontested that Pizzonia had sold the vehicle to Jackson over a month before the accident. Further, the Hired Autos coverage would not have applied if the vehicle was leased, etc. from an employee of Rockford Automotive. In this regard Defendants have indicated that Pizzonia was the president of Rockford Automotive. (Defs.' Resp. Pl.'s Mot. Summ. J. 3).[6] As an officer of the corporation, Pizzonia was an employee, which would preclude coverage under the Hired Autos coverage. *See Wigginton Studio, Inc. v. Reuter's Adm'r*, 71 S.W.2d 14, 16 (Ky. 1934) ("An officer of a corporation, when rendering services for the corporation, is an employee or servant of the corporation . . . ."). As discussed above regarding the inapplicability of the Non-owned Autos coverage, the language of this provision requires a connection between the use of the vehicle and Rockford Automotive's business which is completely lacking in this alternative scenario that Pizzonia was the owner.

Finally, Jackson's alleged ownership is not covered by Ohio Security's policy. There are no allegations that Rockford Automotive leased, hired, rented or borrowed the vehicle from Jackson to afford coverage within the Hired Autos provision. Likewise, the are no allegations in the state court complaint, nor do Defendants provide any basis or argument for the implausible contention that Henderson's use of the Ford Explorer at the time of the tragic accident was connected to the business affairs of Rockford Automotive's garage business. *See Thompson*, 839

---

[6] This representation is consistent with Rockford Automotive's 2020 annual report filed with the Kentucky Secretary of State. *See* Rockford Automotive Inc., *Annual Report Online Filing*, https://web.sos.ky.gov/corpscans/48/0731548-09-99999-20200814-ARP-8102166-PU.pdf (last visited Dec. 21, 2020).

S.W.3d at 581 ("The insurer has a duty to defend only if there is an allegation which potentially, possibly, or might come within the coverage of the policy. Since no such possibility exists, even if Meyer's and Sachse's allegations are accepted as true, there is no duty of West American to defend or indemnify Thompson." (internal citation omitted)). Absent an alleged association between Henderson's use of the Ford Explorer and Rockford Automotive, there was no use "in connection with" Rockford Automotive's garage business to implicate coverage under the Non-owned Autos coverage.

The facts of this case make clear there was no possibility of coverage under the Policy with respect to the state suit regardless of ownership of the subject vehicle. As a result, Ohio Security does not have a duty to defend or indemnify Defendants against the suit. *See Ky. Ass'n of Counties All Lines Fund Tr. v. McClendon*, 157 S.W.3d 626, 635 (Ky. 2005) ("In Kentucky, an insurer has a duty to defend if there is an allegation which might come within the coverage terms of the insurance policy, but this duty ends once the insurer establishes that the liability is in fact not covered by the policy." (citation omitted)); *Thompson*, 839 S.W.3d at 581. Accordingly, the motion is granted.

## V. CONCLUSION

For these reasons, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (DN 57) is **GRANTED**. The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

December 22, 2020

cc: counsel of record